**ADRIAN WALDERA TRUCKING, INC., Plaintiff,**

v.

**QUALITY LIQUID FEEDS, INC., Defendant.**

No. 93–C–497–S.

United States District Court, W.D. Wisconsin.

March 3, 1994.

Richard A. Westley, Westley Law Offices, Madison WI, for plaintiff.

Steven C. Underwood, Stolper, Koritzinsky, Brewster & Neider, Madison WI, for defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Adrian Waldera Trucking, Inc. commenced this action against the defendant Quality Liquid Feeds, Inc. in the Circuit Court for Trempealeau County, Wisconsin to recover tariff undercharges pursuant to 49 U.S.C. § 10762. Plaintiff also advances tariff undercharge claims based upon Minnesota law, as well as state law breach of contract claims and claims based upon promissory and equitable estoppel. On August 2, 1993 the matter was removed to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1331 based upon the federal tariff undercharge claim.

The matter is presently before the Court on cross-motions for partial summary judgment, including motions for summary judgment on the sole federal claim. The Court concludes that defendant is entitled to summary judgment on the federal tariff undercharge claim and that continuing supplemental jurisdiction should not be exercised over the remaining state claims. Accordingly, this memorandum addresses only the federal claim.

The following facts are undisputed.

## FACTS

Defendant Quality Liquid Feeds, Inc. is a Wisconsin corporation in the business of manufacturing and selling liquid feed to farmers. Defendant has 59 employees and has always had fewer than 100 employees. Plaintiff is a Wisconsin corporation in the for-hire trucking business. Plaintiff is the successor to a sole proprietorship known as Adrian Waldera Trucking whose assets were transferred to plaintiff on or about January 1, 1989. For purposes of this memorandum plaintiff and its predecessor are referred to collectively as "plaintiff."

Plaintiff began transporting defendant's products in 1981 and was defendant's principal hauler until 1993 when their relationship terminated. Plaintiff is no longer transporting property.

In 1985 plaintiff acquired ICC authority to transport supplies to defendant's manufacturing facilities. Consistent with this authority plaintiff filed common carrier tariffs which became effective on January 29, 1985. The applicable and effective tariff rates for the period May 28, 1990 to the date plaintiff ceased interstate shipments for defendant would have resulted in charges $245,800.00 more than the amounts billed and paid for those shipments. Plaintiff commenced this action to recover these tariff undercharges on May 28, 1993.

## MEMORANDUM

Plaintiff's federal claim is based upon the long established "filed rate doctrine" which forbids equitable defenses to the collection of federal tariff undercharges pursuant to the Interstate Commerce Act, 49 U.S.C. § 10101, et seq. Maislin Industries, U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). The Court in Maislin reaffirmed strict application of the filed rate doctrine and rejected the ICC's "negotiated rates policy" which precluded a carrier from recovering undercharges if the parties had negotiated a lower rate. Id. at 130, 110 S.Ct. at 2768.

In reaction to Maislin and perceived inequities with the filed rate doctrine, Congress adopted the Negotiated Rates Act of 1993

which created certain exceptions to said doctrine. Defendant relies upon one of these exceptions in its motion for summary judgment. The following are relevant portions of the Negotiated Rates Act of 1993:

(f) PROCEDURES FOR RESOLVING CLAIMS INVOLVING UNFILED, NEGOTIATED TRANSPORTATION RATES—

(1) ... IN GENERAL.—When a claim is made by a motor carrier ... regarding the collection of rates or charges for such transportation in addition to those originally billed and collected by the carrier or freight forwarder for such transportation, the person against whom the claim is made may elect to satisfy the claim under the provisions of paragraph (2), (3), or (4) of this subsection, upon showing that—

(A) the carrier or freight forwarder is no longer transporting property or is transporting property for the purpose of avoiding the application of this subsection; and

(B) with respect to the claim—

(i) the person was offered a transportation rate by the carrier or freight forwarder other than that legally on file with the Commission for the transportation service;

(ii) the person tendered freight to the carrier or freight forwarder in reasonable reliance upon the offered transportation rate;

(iii) the carrier or freight forwarder did not properly or timely file with the Commission a tariff providing for such transportation rate or failed to enter into an agreement for contract carriage;

(iv) such transportation rate was billed and collected by the carrier or freight forwarder; and

(v) the carrier or freight forwarder demands additional payment of a higher rate filed in a tariff.

\* \* \* \* \* \*

(5) EFFECTS OF ELECTION.—When a person from whom additional legally applicable freight rates or charges are sought does not elect to use the provisions of paragraph (2), (3), or (4), the person may pursue all rights and remedies existing under this title.

\* \* \* \* \* \*

(9) CLAIMS INVOLVING SMALL–BUSINESS CONCERNS, CHARITABLE ORGANIZATIONS, AND RECYCLABLE MATERIALS.—Notwithstanding paragraphs (2), (3), and (4), a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid—

(A) if such person qualifies as a small business concern under the Small Business Act (15 U.S.C. 631 et seq.).

Defendant relies upon § (f)(9) as a complete defense to plaintiff's federal tariff claim. It is undisputed that the Act applies to the claims advanced by plaintiff. It is also undisputed that defendant qualifies as a small business concern under the Small Business Act as required by § (f)(9)(A). Plaintiff's argument in rebuttal to said defense is that in addition to being a small business, defendant must make the factual showing required by §§ (f)(1)(A) and (B), and has failed to do so. Plaintiff's interpretation is contrary to the plain language of the statute and the clear legislative history. It must be rejected.

The statute expressly limits the required showing under § (f)(1)(A) and (B) to those persons who elect to satisfy their claims under the provisions of paragraphs 2, 3 or 4. The defendant has not so elected. Paragraph 9 under which defendant proceeds contains no such requirement. In fact, paragraph 9 eliminates all liability for tariff undercharges "notwithstanding paragraphs 2, 3 and 4." Contrary to plaintiff's assertions this language is not surplusage. It affirms that even though the settlement proceedings of paragraphs 2, 3 and 4 may otherwise be available to a defendant, the defendant may totally avoid payment of undercharges if it meets the criteria of paragraph 9.

House report number 103–359 describes the effect of paragraph 9 as follows:

In addition, the bill declares amnesty for claims involving small shippers, charitable organizations, and recyclers. The Committee believed that these groups should

not be held liable for any of the undercharge claims pending against them.

H.R.Rep. No. 103–359, 103d Cong., 1st Sess. 10, *reprinted in* 1994 U.S.C.C.A.N. 2534, 2537. Based upon the language of the statute and the legislative history the intent of this enactment could not be more clear. Qualified small businesses which have been billed and have paid for shipping costs are exempt from subsequent claims that the filed tariff exceeded the amount billed. Nothing additional need be shown to take advantage of this exemption. Accordingly, defendant is entitled to summary judgment on plaintiff's claim based upon federal tariffs.

Because both parties are Wisconsin corporations there is no basis for asserting jurisdiction over the state claims under 28 U.S.C. § 1332. Having determined prior to trial that defendant is entitled to summary judgment on the merits of plaintiff's federal claim, the Court declines to exercise continuing supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3) and *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993).

### ORDER

IT IS ORDERED that defendant's motion for summary judgment on plaintiff's federal tariff undercharge claim is GRANTED.

IT IS FURTHER ORDERED that plaintiff's pendent state claims are REMANDED to the Circuit Court for Trempealeau County, Wisconsin based upon the absence of original subject matter jurisdiction over those claims.

IT IS FURTHER ORDERED that judgment be entered in favor of the defendant against the plaintiff DISMISSING all federal claims contained in plaintiff's complaint with prejudice and costs.