See also 174 B.R. 271.

**In re LIFSCHULTZ FAST FREIGHT CORP., Debtor.**

**Bruce E. de'MEDICI, Trustee, Plaintiff,**

v.

**TOP LINE RECORD DISTRIBUTORS, INC., Defendant.**

Nos. 90 B 21673, 94 C 5171.

Adv. No. 93 A 160.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 18, 1994.

Robert B. Walker, Sims, Walker & Steinfeld, Washington, DC, for plaintiff Bruce E. de'Medici.

Bruce E. de'Medici, Trustee, Bruckert & Moore, Chicago, IL.

Leonard H. Hecht, Thomas T. Hecht, P.C., New York City, for defendant Top Line Record Distributors, Inc.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

### BACKGROUND

This adversary proceeding arises out of an ongoing Chapter 7 Bankruptcy action in the Bankruptcy Court for the Northern District of Illinois. The debtor in the Chapter 7 action is Lifschultz Fast Freight Corporation, a trucking company that operated under the Interstate Commerce Act, 49 U.S.C. § 1, *et seq.* In the present suit, the trustee is attempting to collect "undercharges" from defendant Top Line Record Distributors, Inc. ("Top Line"), a customer of the debtor. Undercharges are the difference between the applicable tariff rate that the debtor was legally obligated to charge and the rate that the debtor actually assessed to Top Line.

Top Line moved for summary judgment and because this action is related to the bankruptcy case, the bankruptcy court had jurisdiction to decide the motion. 28 U.S.C. §§ 157, 1334. However, the parties did not consent to the entry of a final order or judgment by the bankruptcy judge. Therefore, pursuant to 28 U.S.C. § 157(c)(1), any final order or judgment must be entered by this court. After considering Top Line's motion for summary judgment, the bankruptcy judge submitted his "Proposed Findings of Fact and Conclusions of Law" ("Proposed Findings"), to which the trustee objected. *See Id.* In deciding Top Line's motion for summary judgment, this court will consider the bankruptcy judge's Proposed Findings and will also review *de novo* those matters to which the trustee timely and specifically objected. *Id.*

The bankruptcy court found that, based on 49 U.S.C. § 10701(f)(9), Top Line was entitled to summary judgment. Section 2(a) of the Negotiated Rates Act of 1993 (the "NRA"), Pub.L. No. 103–180, 107 Stat. 2044 (1993), amended 49 U.S.C. § 10701 by adding subsection (f). Paragraph (9) of that new subsection contains the "small business concern defense," which provides:

> Notwithstanding paragraphs (2), (3), and (4), a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid ... if such person qualifies as a small-business concern under the Small Business Act (15 U.S.C. 631 et seq.)....

49 U.S.C. § 10701(f)(9).

The bankruptcy court first found that Top Line was a "small business concern" under the Small Business Act, 15 U.S.C. § 631 *et seq.* The bankruptcy court then found that Top Line could invoke the "small business concern defense" of 49 U.S.C. § 10701(f)(9), which it held "unconditionally extinguishes a small business concern's liability to pay undercharges."

In its Proposed Findings, the bankruptcy court explicitly rejected the trustee's argument that the small business concern defense conflicts with the "anti-forfeiture provisions" of the Bankruptcy Code (or "Code"), 11 U.S.C. §§ 541(c)(1) and 363(*l*). The bankruptcy court also disagreed with the trustee's theory that the funds sought from Top Line in this action represent "late payment rates" instead of undercharges. The trustee timely objected to both of these findings, and this court will review them *de novo.*

## DISCUSSION

### I. Anti–Forfeiture Provisions of the Bankruptcy Code

When an entity files a bankruptcy petition, a bankruptcy estate is created, and all of the entity's pre-petition property becomes property of the estate. *See* 11 U.S.C. § 541(a)(1). The Bankruptcy Code has two anti-forfeiture provisions designed to protect the assets of the estate and preserve the power of the trustee. The first deals with restrictions on the transfer of the debtor's property to the bankruptcy estate, and provides:

> [A]n interest of the debtor in property becomes property of the estate ... notwithstanding any provision in ... applicable nonbankruptcy law—(A) that restricts or conditions transfer of such interest by the debtor; or (B) that is conditioned on the insolvency or financial condition of the debtor ... and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1). The second anti-forfeiture provision protects the trustee's right to manage the property of the bankruptcy estate. That provision states:

> [T]he trustee may use, sell, or lease property [of the bankruptcy estate] ... notwithstanding any provision in ... applicable law that is conditioned on the insolvency or financial condition of the debtor ... that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

11 U.S.C. § 363(*l*).

 The trustee argues that these provisions of the Code render the small business concern defense inapplicable in this case because it is, in effect, "conditioned on the financial condition of the carrier." The trustee's conclusion is based on the following two premises. First, before a party can invoke the small business concern defense, it must meet the general requirements enumerated in 49 U.S.C. § 10701(f)(1). One of those requirements is that a carrier must show that it is "no longer transporting property or is transporting property for the purpose of avoiding the application of this subsection."

*Id.* Second, because a non-operating carrier generates no revenue, and the lack of revenue directly affects a carrier's financial condition, the trustee argued that conditioning the application of the small business concern defense on the operating status of a carrier is the same as conditioning its application on a carrier's financial condition. Thus, the trustee concludes that the Bankruptcy Code's anti-forfeiture provisions apply to the funds owed by Top Line, and the small business concern defense of 49 U.S.C. § 10701(f)(9) is inapplicable.

The bankruptcy court disagreed with the trustee's interpretation of 49 U.S.C. § 10701(f), and concluded that the applicability of the small business concern defense does not depend on whether or not a carrier is operating. The bankruptcy court found that the general requirements found in section 10701(f)(1) only apply to the statute's procedures for resolving claims, found in section 10701(f), paragraphs (2) through (4), and not the small business concern defense of section 10701(f)(9). Therefore, the bankruptcy court found that the anti-forfeiture provisions, triggered by the debtor's financial condition, do not apply in this case.

This court agrees with the bankruptcy judge that the general requirements of 49 U.S.C. § 10701(f)(1) do not apply to the small business concern defense of 49 U.S.C. § 10701(f)(9). Paragraph (1) states that "the person against whom the claim is made may elect to satisfy the claim under the provisions of paragraph (2), (3), or (4) of this subsection, upon showing that ... the carrier is no longer transporting property or is transporting property for the purpose of avoiding the application of this subsection...." 49 U.S.C. § 10701(f)(1). The court finds that the plain language of paragraph (1) indicates that it applies only to the claim satisfaction mechanisms found in paragraphs (2) through (4). *See North Penn Transfer, Inc. v. Polykote Corp.*, 170 B.R. 565, 567 (E.D.Pa.1994).

In addition, paragraph (7) of section 10701(f) provides: "Except as authorized in paragraphs (2), (3), (4), and (9) of this subsection, nothing in this subsection shall relieve a motor common carrier of the duty to file and adhere to its rates, rules and classifications

as required [by statute]." The plain language of paragraph (7) indicates that it applies to paragraph (9). The court finds that if Congress intended the general requirements of paragraph (1) to apply to the small business concern defense of paragraph (9), it would have expressly included paragraph (9) in the language of paragraph (1), as it did in § 10701(f)(7). *See In re Best Refrigerated Express, Inc.*, 168 B.R. 978, 984–85 (Bankr. D.Neb.1994).

■ Furthermore, the court is not persuaded that the legislative history of the NRA codified at 49 U.S.C. § 10701(f), warrants a different conclusion. " 'Absent a clearly expressed legislative intention to the contrary,' the words of the statute are conclusive." *Hallstrom v. Tillamook County*, 493 U.S. 20, 28–29, 110 S.Ct. 304, 310, 107 L.Ed.2d 237 (1989). The court finds that the legislative history of the NRA does not indicate a clear intent that the general requirements in paragraph (1) apply to the small business concern defense in paragraph (9).

■ Finally, the court finds that even if the "no longer transporting" requirement of paragraph (1) applied to the small business concern defense of paragraph (9), the anti-forfeiture provisions of the Bankruptcy Code would not apply in this case. This is because the "no longer transporting" language does not satisfy the anti-forfeiture statutes' "conditioned on the insolvency or financial condition of the debtor" requirement. The fact that a carrier is "no longer transporting" goods simply does not, *a fortiori*, indicate that it is insolvent or otherwise relate to its financial condition. *See North Penn Transfer*, 170 B.R. at 568.

## II. Late Payment Rates or Undercharges

■ The bankruptcy judge also rejected the trustee's argument that the small business concern defense does not apply in this case because the trustee seeks to collect "late payment rates" from Top Line, rather than traditional undercharges. The trustee claims that the bankruptcy judge's finding "misses the forest for the trees." The court disagrees.

According to the bankruptcy judge, the trustee did not submit any evidence to support his "late payment" argument and to rebut Top Line's affidavit, which clearly demonstrated that the trustee seeks to collect undercharges. The trustee almost concedes as much in his objections to the bankruptcy judge's proposed findings. In an effort to save himself from summary judgment, the trustee has submitted an affidavit which he claims proves that he seeks to collect funds owed by Top Line for failing to pay its invoices in a timely fashion.

The court finds, however, that the trustee's effort is too little, too late. In order to fend off summary judgment in this case, the trustee was required to respond to Top Line's affidavit with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The court agrees with the bankruptcy judge that the trustee failed to carry this burden. While the court recognizes that it must review *de novo* the proposed findings of a bankruptcy court to which the trustee has timely objected, the court will not permit the trustee to present evidence that was not presented to the bankruptcy judge. To allow submissions of new evidence would render 28 U.S.C. § 157(c)(1) meaningless. Indeed, if district courts considered evidence not before the bankruptcy judge, the bankruptcy courts would merely be advising parties of the shortcomings of their motions. This certainly was not the intention of Congress when it passed section 157(c)(1).

## CONCLUSION

The court agrees with the bankruptcy judge that the anti-forfeiture provisions of the Bankruptcy Code do not render the small business concern defense inapplicable in this case. Furthermore, the court finds that the trustee did not submit sufficient evidence to rebut Top Line's affidavit, which clearly demonstrates that the trustee seeks to collect undercharges in this case. Therefore, Top Line's motion for summary judgment is granted.

IT IS SO ORDERED.